UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | NO. 1:16-CR-10268-IT |
| v. | ) | |
| | ) | |
| | ) | |
| SCHULTZ CHAN | ) | |

**MEMORANDUM IN SUPPORT OF THE
DEFENDANT'S MOTION TO DISMISS INDICTMENT**

Defendant Schultz Chan, by and through his counsel, respectfully submits this

Memorandum in support of his Motion to Dismiss Counts One, Two and Three of the above

captioned Indictment as being improperly vague, and if not vague then for failing to demonstrate

any criminal offense.

## I.       Introduction

In this case, the indictment charges Mr. Schultz Chan, a.k.a Jason Chan, with three counts

of "Securities Fraud." The Government alleges that he did "employ manipulative and deceptive

devices and contrivances in contravention of Rule 10b-5 (17 C.F.R. § 240.10b-5) of the Rules

and Regulations promulgated by the United States Securities and Exchange Commission."

Specifically, in Count 1, the Government alleges that he violated his fiduciary duty to Akebia

Therapeutics, Inc. (Akebia) by trading in securities of Akebia while in possession of material

non-public information (MNPI). In Counts 2 and 3, the Government alleges that Mr. Chan

provided that same MNPI to his wife, described as T-1, and to a friend, described as T-2, each of

who then traded in Akebia stocks, allegedly on the basis of this information. The indictment

offers no factual basis to support Counts 2 and 3 other to allege that Mr. Chan spoke by phone or

text message with T-1 and T-2 and they each subsequently purchased Akebia stock.

II.     **Background**

Mr. Chan immigrated to this country in 1987 and became a citizen in 2000. He worked

hard, studied, and obtained two doctorate degrees.  Since then, Mr. Chan has worked at a number

of companies that specialize in bio-technology. Armed with his deep understanding of the

industry, he has spent years analyzing publically available information to make profitable trades

in the securities of various "biotech" companies.

After leaving his previous position at Genocea in July 2015, Mr. Chan began working as

the Director of Biostatistics at Akebia on or about August 17, 2015.  Akebia is a

biopharmaceutical company that develops drugs for individuals suffering from various kidney

diseases.  The company is traded on the NASDAQ Stock Market under the symbol AKBA.

Before accepting a position at Akebia, Mr. Chan substantially researched the company

and the drugs it was developing.  He believed it was a good company with a solid technology,

which is why he accepted Akebia's offer of employment. This belief that Akebia was a "good

investment" also led Mr. Chan to purchase 2200 shares of Akebia on August 13, 2015, before he

worked for the company, and clearly before there was even a possibility he was in possession of

MNPI.

On August 14, 2015, Akebia entered a so-called blackout period. Employees and

contractors were notified by email, and instructed not to share any information regarding the

2015 Phase 2 clinical trials with anyone.  Mr. Chan did not work for Akebia at this time and so

did not receive this email notification.

As noted above, Mr. Chan officially began working for Akebia on August 17, 2015.

Later that week, the price of Akebia stock declined. Consequently, and based on his initial faith

in the company, Mr. Chan placed a limit order to buy 5900 shares of Akebia on August 19, 2015.

The target price for this order was approximately 15% below the price he had paid on August 13, 2015. There is no evidence that Mr. Chan possessed any MNPI on August 19, 2015 when this limit order was placed.

On August 21, 2015, at 6:27 AM, Mr. Chan placed another limit order to buy 7900 shares of Akebia, with a target price about 5% below his purchase of two days earlier. Again, these purchases were based on his confidence in the company, and the continued decline in the stock price. At the point of this second limit order, Mr. Chan was still not in possession of any MNPI.

Later that day, August 21, 2015, at 3:10 PM, Mr. Chan was notified by email of the 2015 Phase 2 study "top line" results. This is the first moment at which Mr. Chan possessed any allegedly MNPI and from this moment on he made no trades in Akebia. The Akebia FINRA report referenced in discovery confirms that Mr. Chan became aware of the 2015 Phase 2 study only on August 21, 2015 at 3:10 PM.  Mr. Chan made no trades in Akebia stock after receiving this information.

### III.      Argument

The Sixth Amendment of the United States Constitution guarantees "the defendant the right to be informed of the nature and cause of the accusation" against him. U.S. Const. Amend. VI. The Fifth Amendment guarantees that a citizen shall not be subject to prosecution except on a "presentment or indictment of a grand jury." Id. Amend V. These Constitutional provisions are designed to enable a defendant charged with a crime to prepare a meaningful defense, to ensure the accused is tried on the basis of those facts found by a grand jury to warrant the charge, and to enable the accused to plead double jeopardy against a future prosecution. Russell v. United States, 369 U.S. 749 (1962); Hamling v. United States, 417 U.S. 87, 117 (1974); United States v. Resendiz-Ponds XX U.S. XX (2007); United States v. Bohonus, 628 F.2d 1167, 1173 (9th Cir.)

(cert denied, 447 U.S. 928 (1980)). Rule 7(c)(1) of the Federal Rules of Criminal Procedure provides that "[t]he indictment must be a plain, concise, and definite written statement of the essential facts constituting the offense charged" and "must give the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated." Fed.R.Crim.P. 7(c)(1).

In order to preserve these basic rights, it has long been recognized that an indictment must allege each and every element of the crime charged. An indictment is sufficient so long as it "(1) contains the elements of the offense intended to be charged; (2) sufficiently apprises defendant of what he must be prepared to meet; and (3) allows the defendant to show with accuracy to what extent he may plead a formal acquittal or conviction in the event of a subsequent prosecution." United States v. Vitriol, 490 F.3d 314 (3rd Cir. 2007). Mr. Chan respectfully submits that the lack of specific factual allegations contained in the Indictment in this case fails to meet this standard.

**A.  Count One**

Mr. Chan did not know the 2015 Phase 2 study results until 3:10 pm on August 21, 2015. His last trade in Akebia was placed at 6:27 am on August 21, 2015, before he had possession of this allegedly MNPI. His two trades of Akebia stock during the so-called blackout period were limit orders, which under Rule 10b5-1 do not meet the scienter requirement for violating his fiduciary duty. See Rule 10b5-1(c)(1)(i)(A)-(C).

**B.  Counts Two and Three**

Counts Two and Three as alleged in the indictment are equally flawed. They allege respectively that Mr. Chan provided T-1 and T-2 with MNPI without setting forth any factual basis for the allegation except stating that Mr. Chan communicated with them by telephone

(voice calls and text messaging). None of the calls were recorded and none of the text messages were captured. None of the participants of the calls have made statements about the contents of the calls. There are no emails or text messages explaining the calls. It is pure speculation that during any of these calls Mr. Chan disclosed MNPI.

The court has enunciated factors to consider in such "misappropriation" cases involving tipping and mostly or all circumstantial evidence. United States v. Larrabee, 240 F.3d 18 (2001). These factors include: "(1) access to information; (2) relationship between the tipper and tippee; (3) timing of the contact between the tipper and tippee; (4) timing of the trades; (5) pattern of trades; and (6) attempts to conceal either the trades or the relationship between tipper and tippee." Larrabee, 240 F.3d at 21-22; see also, SEC v. McGinnis, 2015 U.S. Dist. LEXIS 127406 at 10-14.   The Court in Larrabee, as well is a number of SEC cases analyzing motions for summary judgement, looked at those factors in a very fact-dependent way, determining whether there was sufficient evidence that the defendant disclosed material non-public information. Larrabee, 240 F.3d at 22-24; see also, e.g., McGinnis, 2015 U.S. Dist. LEXIS 127406 at 10-14.

In Larrabee, the tipper had a documented and recorded opportunity to obtain the information while at work; he had a complex personal, financial and professional relationship with the tippee including spending vacations together, the tippee paying tuition for the tippee, and the regular exchange of large sums of money; the timing of the contact and trades immediately followed the tipper's opportunity to get the MNPI and the trades themselves followed an unusual pattern; and the tipper attempted to obfuscate his relationship with the tippee and the trades that they had made. 240 F.3d at 22-24. Similarly, in McGinnis, all of the factors were satisfied – in detail, with a complex analysis of alignment of trades made by the breached of the fiduciary duty and multiple tippees. 2015 U.S. Dist. LEXIS 127406 at 10-14.

However, in this case, the Indictment fails to set forth any material information in support of those factors. Although Mr. Chan had MNPI prior to the trades of the alleged tippees, and although Mr. Chan had a relationship with the alleged tippees, the contact between Mr. Chan and the alleged tippees was not immediately following the discovery of that information, as it was in Larrabee. 240 F.3d at 22-24.  Further, the alleged tippees trades did not immediately follow the contact.  Mr. Chan's and the alleged tippees trades did not align in time, and profits were not realized. Id; see also McGinnis, 2015 U.S. Dist. LEXIS 127406 at 10-14.

It is true that Mr. Chan routinely contacted his wife, T-1, throughout the weeks before and weeks after her trades.   However, discovery has shown that there was no change in contact frequency or duration of these contacts after he received the MNPI. The same holds true for the contact with T-2.

Further, the way the trades were executed was not unusual or hidden.  In Larrabee, the tippee was a broker who made a trade twice as large as any he had executed, across more accounts than usual, and who remained on the phone to make sure the trade went through before the market closed. 240 F.3d at 22-24. That is not the case here. Neither Mr. Chan nor the alleged tippees made any effort to conceal their trades or their relationship, in stark contrast to the individuals in Larrabee. Id.

The Indictment also fails to establish any suspicious timing between phone conversations among Mr. Chan and the alleged tippees and the trades in Akebia. Compare, SEC v. Alexander, 160 F. Supp. 2d 642 at 652-53 (SDNY 2001) (holding that the "timing of the alleged contacts" combined with the "purchases" of securities, create a "strong inference" of insider trading); SEC v. Warde, 151 F.3d 42, 47- 48 (2d Cir. 1998) (defendant's access to insider information, coupled with pattern of phone calls and stock purchases, provided sufficient evidence of insider trading to

support jury verdict); <u>SEC v. Scoppetoulo</u>, 2011 U.S. Dist. LEXIS 7819 at 3 ("The SEC also sets forth specific factual allegations that reveal a pattern of phone calls, text messages, meetings, stock purchases and subsequent trading resulting in profit…. The SEC sufficiently pleads scienter insomuch as the SEC alleges that Defendants were in possession of the information thereby giving 'rise to a strong inference of use' due to the suspicious timing of the communications and trading.")

Counts Two and Three of the indictment also allege that Mr. Chan provided this information because of his personal relationships with T-1 and T-2, and in the case of T-2, in exchange for financial benefits and non-public information concerning the biopharmaceutical company where T-2 worked. The indictment, however, offers no specific information in support of this allegation whatsoever.

### IV. Conclusion

For the reasons set forth above, Mr. Chan respectfully requests that this Court dismiss Counts One, Two and Three of the Indictment.

Respectfully Submitted,
Counsel for the defendant,

/s/ *Liam Scully*

_____

Liam Scully
Scully & Lagos
101 Summer Street
4th Floor
Boston, MA  02110
(617) 307-5056

*/s/ David Jellinek*

_____
1163 Walnut St. #1
Newton, MA  02461
857 234 0135

Dated: January 27, 2017